If it pleases the Court, Your Honor, I would like to reserve three minutes of my time for rebuttal. And it is good. It is a complicated story in some senses, or it's a detailed story. But the point is simply this. At every stage of the proceedings, in terms of investigating or resolving the Goldie's claim, Hartford committed bad faith. They did it clearly. They did it every time. They did it when they retained their counsel. Their counsel continued it. And their counsel became simply an instrument of the bad faith. But didn't they pay Goldie off on the value of the car? Only after a lawsuit was filed in six days before trial. Okay. The answer to that is yes. The answer to that is yes. And I know it took time. Yes, Your Honor. But they're not too smart, you know, to cancel the insurance either, were they? What did they do, leave the pink slip with this guy when they left the country? How much was the Porsche worth? It was going to retail for about $45,000. They thought they were going to resell it for about $45,000. Okay. Well, I thought it was one of those $200,000 ones. No, Your Honor. He stole others like that. You didn't want to say the insurance money. Okay. Well, you know, there was a real question whether that policy wasn't canceled. No. And they consulted. Yes, there was. No. Well, please, my reading of it, I might well say it canceled. Anyway, they asked their lawyer. The lawyer says, yes, it's over. That's not bad faith. You don't exaggerate your case. No, Your Honor, I don't need to exaggerate it. What happened was they turned over the car to Mr. Kahn, Randall Kahn, on November 27 of 2000. They turned over the pink slip to him about December 4 of 2000. They left the country to go to Europe. They believed the car was going to be sold. So at the end of January or early February, they sent in a notice saying, Okay, we think the car is going to be sold, so we'll cancel the policy retroactive to December. But when Mr. Kahn stole the car, which is November 27 of 2000, when he stole the car, the insurance was in effect. They hadn't canceled the policy then. And so the policy was in effect when he stole the car on November 27 of 2000. Now, the fact that they retained counsel does not excuse Hartford from conducting itself in good faith. They have to, at every stage of the proceedings, conduct themselves with good faith. In fact, one of the cases, State Farm Mutual, talks about what it is, the standard that an insurance company would have to comply with. And in the State Farm Mutual case, quote, from 228 Calab III, 721, it says, If the insurer has exercised good faith in all of its dealings under its policy, and if the settlement which it has rejected has been fully and fairly considered, and has been based upon an honest belief that the insurer could defeat the action or keep any possible judgment within the limits of the policy, and its judgments are based on a fair review of the evidence after reasonable diligence in ascertaining the facts, and upon sound legal advice, a court should not subject the insurer to further liability if it ultimately turns out that its judgment is mistaken judgment. But the key is they had to conduct their investigation and their claim evaluation in good faith. At when? At all times. At all times. When did you say you stipulate now, based on what we know in hindsight, in retrospect, that the car was stolen on November 27th? Correct. It wasn't that clear at the time. Well, it was if they had done their investigation, and here's why. Mr. Goldie, in his first report to Hartford Insurance, says, you know, here's the facts. Here's what's going on. And, by the way, Hartford, Mr. Kahn's criminal lawyer has called me and told me that Mr. Kahn wants to make restitution for what he stole. And I told the criminal lawyer I made a claim with Hartford. Well, gee, wouldn't that be an indication to Hartford that Kahn was trying to steal the car? Mr. Kahn is ---- But when did he steal it? I mean, look, I prosecuted these cases for 17 years. And when you knowingly and with a clear conscience deliver possession of something to somebody else, then it becomes a tricky proposition to figure out if somebody else does something bad with a car, precisely when it was that that person had the state of mind necessary for a crime. Well ---- Did that person have it when the person took possession? Or later on, was it an embezzlement down the road? And it starts to get very tricky. Absolutely. Especially when you have to look at 34 other cars to begin to decide this is a common scheme, plan, and design. And the moment he took it, ha, ha, ha, you know, my intent is to steal it. Your Honor, you hit upon it exactly. Now, let's see if Hartford had properly investigated the claim, whether they would have known that he intended to steal the car on November 27th. First, of course, I just said he had criminal counsel, and his criminal counsel said that he wanted to make restitution for the theft. That would be an indication that he intended to steal it in November. Second of all ---- Maybe. But it's an indication, an indication. Why is it an indication? At some point he did steal it, but why on November 27th? Well, they don't know that. Hartford doesn't know that. They're simply told that, and they don't investigate it. No, but I mean, how is the fact of restitution doesn't get you anywhere? It goes to the fact that Mr. Kahn believed he'd stolen the car. But let me keep going, because I'll give you another fact. The other fact is, as soon as Mr. Kahn ---- Ever find this car? Yes. The car was found and resold. In other words, it was repossessed, sold to Hohn Porsche, and sold to somebody else. Yes. The next thing is ---- What was it sold for? I don't know that, Your Honor. I don't know. As soon as Mr. Kahn receives the pink slip from Mrs. Goldie, from Betty Goldie, immediately he forges a company check so that it looks like his company has paid the Goldies for the car. He then goes to Robert Stephen Investment, and he presents the check and says, Here, it's my car. Here's the pink slip. I paid the Goldies. And he borrows against it, using it as collateral. He does that on December 5th. Now, when does Hartford find this out? Good question, Your Honor. Because all they had to do, because Mr. Goldie told them this, all they had to do was find out from RSI, Robert Stephen Investment. But I know they didn't do that, because in the underlying litigation over the contract case, Hartford says, we don't know what's in the RSI documents. In the context of discovery, I had subpoenaed them, and I was going to supply them, and I did. But that was in litigation, after the litigation had already started. So they didn't even try to find out what the RSI documents said. Again, they didn't fully investigate the claim. When they reopened the claim, the Goldies' counsel showed them several other cases, including 13 cases for which Mr. Kahn was convicted. And when was it the last time you thought that a coverage counsel's advice to his insurance company was don't investigate the other cases? If the key is Mr. Kahn's intent, and if this is really just a Ponzi scheme that you could find out from investigating the 13 other instances where he was convicted, yet the coverage lawyer said, don't investigate it. We don't know quite all the dates. They didn't tell me all the dates, so I don't know if they all apply. So don't investigate. That's not good faith from a lawyer. And finally, when Hartford reopens the case, they don't investigate the criminal lawyer. I mean, they don't ask the criminal lawyer what Kahn intended to do. They don't ask Kahn what he intended to do. They don't ask the DA if they're going to prosecute him. They don't investigate the other 13 cars. All they do is take the Goldies' examinations under oath. That's it for eight months. That's not good faith investigation of the underlying facts. And had they investigated those facts, they would have seen what Kahn's intent was on November 27th. Not just the fact that he pled no contendering and was convicted of stealing the car. What about the statute of limitation argument? Your Honor, I believe that Aschew, the Aschew case that we mentioned, shows that when an insurance company decides to reopen the case, that stays the running of the statute. That's exactly what happened in Aschew. They claim they never did that. But of course, they did do it because they said to the court below that they did it. They said to us that they did it because they said, you've asked us to reopen this claim. We did. We will. We are. And that's exactly what they did for eight months. You've got six seconds. You want to save it? I do. Good. You have a very good voice. Clear. Thank you, Your Honor. Yeah. And now have some water. Yeah. Oh, please. Good morning, Your Honors. May it please the Court. Dean McVeigh for Defendant Hartford. Your Honors, this is a very clear case. Originally, it was filed in state court, and then it was removed on the basis of diversity jurisdiction. We're here reviewing Judge Liu's summary judgment grant. And as Your Honors have correctly pointed out, the statute of limitations applies in this case as to the bad faith cause of action. Even if it didn't, even if there was a proper cause of action before Judge Liu, Judge Liu was correct in finding that Hartford did act reasonably in denying the claim. There was no coverage. As Judge Noonan pointed out, the policy was canceled effective December 1, 2000. It was a simple case. This wasn't a case where you had to subpoena witnesses. In fact, this was an EUO. In an EUO or an examination under oath, it's a provision of the insurance policy with the insureds that the insureds can come in, submit evidence, give their testimony under oath, et cetera. There's no subpoena power in an examination under oath. There's no case filed. The only time there was a case filed was when the Goldies filed a case in October of 2000 and I believe it was two for the breach of contract. That case was settled. There's no raised judicata issues because it was settled and the Goldies were paid the full value of their vehicle. Instead of filing a lawsuit initially in state court for both breach of contract and a second cause of action for the tortious breach of implied covenant, they only filed one cause of action for whatever reason. It wasn't Mr. Winston's fault. He wasn't the attorney of record. But that was a grievous error on the attorney's part. The Goldies have recourse in this action and that's against the original attorney, Mr. Ratick. However, the statute was blown in this case. Well, I don't quite understand that. In your brief on page 17, you say, Here Hartford had already formally denied the Goldies' claims and here's the language that I have pause over. Merely agreed to consider new information. It did not reopen the claim to reevaluate the claim anew. Let me repeat that. It did not reopen the claim to reevaluate the claim anew. All right. So I'm reading through the record and I run across a February 6, 2003 letter. Dear Mr. and Mrs. Goldie. And it's signed by Kathy Green, a claim specialist for Hartford Fire Insurance Company. And it says, Based upon this request, Hartford agreed to reopen its claim investigation. And then it says, Conduct examinations under oath and reevaluate, reevaluate its claim determination. After reopening the claims investigation, you lose. Now, how can you tell us it did not reopen the claim to reevaluate the claim anew, based on what this information is in the February 6 letter? The magic point is the unequivocal denial of the claim on March 1, 2008. No, no, no. That's not the magic point. We agreed to reopen. I got it underlined here, too. And you said in your brief it did not reopen. And I don't know how you can say that when the letter says agreed to reopen. Perhaps it's a term of art in the cases. However, the language that is used interspersed within the brief and within the claim file may be confusing. It isn't confusing. It's just flat wrong. If the court looks at Singh v. Allstate, the state court case. Yeah. And now you're getting in real deep water because that case said, well, there was no reopening in this case. And that's how they distinguished Walker, where there was. What happened in this case? Is it or is it not a fact that Hartford reopened the claim investigation based on request? No. It agreed to reopen. Then why didn't you say you did? Did we ignore this letter? I'm really confused. Perhaps it was a misstatement in the letter. But the position is Hartford acted in good faith by reconsidering the points. But once there's an unequivocal. It didn't reconsider. It reopened it. You know, I just I'm having real trouble with what you whenever I see in a brief the word merely. You know, I cross-examine people for 23 years in trial. And I'm like, OK, merely. So trust but verify. You go to the letter and the letter says reopen after reopening. And then you and your brief said we didn't reopen. I don't get it. Give me one more chance to tell me what I'm missing. Under Singh versus Allstate, what Hartford did was they reconsidered new facts. But there was an unequivocal denial. There was an unequivocal denial by Hartford on March 1st, 2002. Well, you're not explaining it to anybody. So let me ask you a couple of other questions. All right. Did you settle the case yourself? No, Your Honor. I wonder why the people settling it didn't take care of the bad faith possibility. It must have been in their minds. Well, that's a good question. I wasn't, Counselor. They just didn't think of it. But, you know, the Code of Civil Procedure says that it has to be in writing. Why would they have settled it except they felt that the policy was in effect? Except? I'm sorry? Why would they have settled it except for thinking the policy was in effect? Didn't they pay up fully on the policy? Just there's various reasons for setting the cost of litigation, Your Honor. Just not to proceed with trial. The cost of litigation. They were on the eve of trial, weren't they? Correct. Then another question. Did you write the brief? Yes. Yes, Your Honor. How did you possibly think that Singh was decided by the Supreme Court of California? Oh, I apologize if I wrote that. Court of Appeal. Yes. What's your answer? I apologize. It's a Court of Appeal case in Riverside. Yeah, but how did you make the mistake a couple of times? Did you read the brief? Yes, I did, Your Honor. And you see the site, you're a California lawyer. Yes. It says Cal App. Yes. You know, that's not the Supreme Court of California. How could you have read it? I mean, I really must say I doubt that you read it. Which, the case or the brief? Did you read it? Yes, Your Honor. I have. And what, Cal App meant Supreme Court of California? Your Honor, I had in my mind when I wrote it that it was the Supreme Court. It just, the mental glitch. It just blotted out the site. But the case site, as Your Honor has it, is in the Court of Appeal. It's 63 Cal App. 4th, 135. Well, of course. But you would call it the Supreme Court. I apologize for the oversight. It was non-intentional. It was non-intent to inflate the significance of the holding. But in seeing, it's important to note that once there's an unequivocal denial, even if there's a reconsideration later, it does not toll the statute. Even if. . . You know, you're not winning on that argument. You ought to make another one. As to the bad faith, Judge Lew is correct that there's no evidence presented of bad faith. There was an investigation. There was coverage counsel. There was no subpoena power, so they couldn't subpoena all these records. There was an EUO process that was taken, and the Goldies came in. They didn't sign their EUOs, but they did submit to that. And there were four grounds for the denial letter, and they were all very clear, and that is the vehicle was insured until March of 2001, but the Goldies canceled it in January retroactively to December 1st of 2000. They knew what they were doing, and in fact. . . Wouldn't it have been important to Hartford to know the exact date of the theft whether it preceded or followed the cancellation? Yes, Your Honor, and in the denial letter for the four grounds given, all four grounds would have happened after the cancellation of the policy because one was the date Mrs. Goldie signed over the title. That was in December. The policy was canceled as of December 1st. The second grounds was the date the Beverly Hills Automotive presented a finance company with a fraudulently signed check. That was December 5th of 2000, again, after the cancellation. But wouldn't it have been important for you to find out what was charged and what was pleaded and so forth? The charge and the plea did not occur until during our case, in fact, long after the claim process, long after the breach of contract case. There was no conviction at that point. Correct. I mean, it was still ongoing when Mr. Winston and I were litigating the underlying bad faith cause of action. In fact, I tried to talk to Mr. Cone's attorney, and they refused to speak to me. They refused to because of the ongoing criminal process. Is that part of the record, that you try to talk? No, it isn't, Your Honor. But Mr. Winston noted that we could have just simply talked to Mr. Cone. Well, we tried, and I tried, and there's no evidence that he would have spoken to us. There's certainly no evidence that we could have subpoenaed RSI records. But the policy lapsed December 1st. All of the activity that we constitute. Not if you reopened the case. You know, I'm sitting here trying to figure out whether you don't understand Singh or whether you do, and you're simply trying to pull the wool over our eyes. What happened in Walker? It was an equitable tolling because they had reopened the case. And then Singh says, well, there was no reopening in here. It was just a reconsideration. And so Singh does not stand for the proposition that a reopening doesn't start a new tolling. I mean, you try to gloss over all these things by saying merely reconsidered when the letter says reopened. Things like that count for a lot when we look at these things. You know, and I don't know whether you don't understand Singh. Instead of just, see, this is what lawyers do. Instead of recognizing that the letter said reopening and telling us even though the letter says reopen, nevertheless, you try to sort of brush it aside and hope we won't see it. We do see it, and then we wonder what's going on. And it doesn't help your credibility one bit when that's the approach you take to the case. You can't mischaracterize things. You've got to cope with what your team said. We are reopening. That was certainly not the intent to reopen. It was to reconsider pursuant to their request. Dig your hole deeper. Your Honor, I'm just trying to articulate the client's position. That's why most people don't like lawyers. We don't care. We want to know what the truth is. And it's hard to get there when we read briefs and we're misled. There was no intent to mislead you, Your Honor. The intent was to explain what happened, that this case was similar to Singh. Even if you get beyond the statute of limitations, there's no bad faith by retaining coverage counsel. There's no bad faith by taking UOs. There's no bad faith by finding that the case, the policy had been canceled. Maybe there's a genuine issue. But that, you know, the new case, the Wilson case, I'm sorry, yes, the Wilson case, discusses a two-year lag in an uninsured motorist case as to benefits paid. There was no question that there was a policy in effect in that case. There was no question. There was a policy. The question in this case was, is there even a policy? Insurance companies don't pay out on claims where there is no policy, where the insured say, please cancel my policy as of December 1st. And, again, the only evidence of some November theft was recent. If the court looks at the Nolo plea, that was long after the denial, that was long after the breach of contract case was resolved, and that was after the breach of implied covenant case. Let me ask you this. Has there been negotiation on a bad faith claim? I mean, has there been an offer, you know, we want so much? In the underlying case, Your Honor, there was. On the bad faith case. This case. This case. Yes, of course. You talked about it? We have, Your Honor. Settling it? We did in the past, yes. Huh? We have had discussions. Well, why don't you go out and settle it while we're here? I mean, that's what you do, settle cases, right? That's one of our jobs. You're good at it, yeah. But in this case, when there is no policy in force, in effect, during the loss, where all the undisputed facts are, the loss occurred after December 1st, when the policy lapsed. The business is not to pay out claims. Well, you know, it turns out there was. You paid it. They've got an argument. You've got some messages today, right? Yes, Your Honor. Okay. You see this, that there's some question that might well go to a jury as to when the theft occurred and whether it came after or before the policy was. I mean, there's a lot to discuss in terms of settlement. I mean, it's only an argument, but it might, you know, what's the chance of it winning? Some chance. Not a life and death matter for the defendant either, except you get attorney's fees on these bad faith cases. No, Your Honor. We're receiving grant fees. Yes, it's grant fees, attorney's fees. Grant fees, in other words, the attorney's fees that were required to get the policy benefit in the first place. You got those, huh? That's what we're seeking, yes, Your Honor. Oh, those fees. How much is that? How much is it? About $30,000. How much do you charge an hour? I might want to hire you. No, that was for the underlying breach of contract. That's what I'm asking. That's what he's asking. That wasn't Mr. Winston, though. That's right. It wasn't me. It was half me and half not. I came in very late in this case. He's not responsible for filing the bad faith case later, but he took over for someone. All right. I thank the Court for your comments and suggestions, and I'll definitely take it. Well, go on and negotiate right now, huh? You know, let me tell you something. Today is a day of history. Do you know that? Yes, Pearl Harbor Day. What is that day in history? December 7, 1941, Pearl Harbor Day, Your Honor. Okay. Well, you missed it. Today is a day of history because it's my 40th anniversary on the Federal bench. You didn't know that. I did not, Your Honor. I didn't do my research properly. Congratulations. I'm going to swage my sorry breast myself in this case. We will attempt to do so, Your Honor. Thank you for your input and your advice, and we'll take it. That's what's on my thing, December 7th. You want to defer submission? No, we've got the case. We've got the case. Oh, I reserve time. That's fine, Your Honor. Yeah, well, keep it. You might need the time some other time. You've only got two seconds, you know. This was a Ponzi scheme, and as a Ponzi scheme, the Goldies lost their car when they gave it to him. Just because they didn't know at the time they gave it to him, this case is indistinguishable from traitors versus Aachen and Munich. Yeah, your clients got paid for that. They got paid for that, yeah. But as in the Wilson case. You used your two seconds. Yeah, you got it. As a matter of fact, we gave you another 23. All right, well, thank you.
judges: Pregerson, Noonan, Trott